May I please the Court? My name is Mark Barr. I represent the petitioner, Jose Manuelos-Galviz. His spouse is in the courtroom today. Unfortunately, Mr. Galviz could not attend. He was detained by immigration three months ago, and despite the existence of a stay of The decision whether to place a person in removal proceedings is a purely prosecutorial task entrusted to the sole discretion of the Department of Homeland Security. So too is the decision about when to initiate those proceedings. As this case illustrates, the prosecutorial discretionary decision about when to serve a person with a charging document, the notice to appear in this case, will often dictate what types of relief are available to that person in removal proceedings. The precise timing of a notice to appear can quite literally mean the difference between a virtually guaranteed deportation versus the chance of being able to plead your case before an immigration judge with the hope of being one of the very few who is able to stay in the country with his family. Nowhere in the INA or its regulations are immigration judges given the authority to share in this prosecutorial role, deciding when to start removal proceedings and when to cut off benefit eligibility. That's a good thing. It wouldn't be a fairer system if the adjudicating body itself could impact a substantive eligibility for congressionally authorized forms of relief from removal. Nevertheless, the government's position in this case allows just such a usurpation of prosecutorial authority. The two-step process it advocates allows an immigration judge to, quote, unquote, perfect a prosecutor's deficient notice to appear and stop the accumulation of presence in the U.S. needed to qualify for cancellation of removal. Not only does this two-step process violate the separation of powers in a deportation proceeding, granting the court the discretionary authority reserved for the prosecutor, it also violates the plain text of the two relevant statutes, which both call for a singular notice to appear. It ignores the legislative history of the immigration charging document, which previously explicitly allowed for the service of two separate documents, but now doesn't. With regard to Chevron, and I know that we have, to me, somewhat arguably ambivalent case law on the permissibility of using legislative history at step one, but how would that even work? Let's say you're right about legislative history and we should consider the House report. With regard to step one of Chevron, how do we do that? Because typically, outside of Chevron, we say, well, if the statutory text is clear, which is somewhat of a proxy for step one, we don't look at legislative history. So why does legislative history have a bearing on the step one analysis? I would disagree. I believe in the step one analysis, all the tools of statutory construction are available to the court to discern congressional intent. I think we start with the language. That's always a good place to start. And here, if we simply look at the language, I have two statutes that both refer to a document in the singular, a notice to appear. That's in the stop time rule. That's in the definition of a notice to appear. But given that that might not completely clear up the issue, and my opposing counsel has made some arguments about why the use of the article A doesn't always mean that something is in the singular, it can sometimes refer to the plural. We look beyond that. And that's where we go to things like legislative history. And I would point out, again, that the charging document previously used prior to 1996, called an order to show cause, was exactly like the current NTA. It requires a host of critical information for the person in removal or deportation proceedings. But there was one difference. Prior to 1996, the statute explicitly allowed the agency to serve an initial charging document that has all the critical information, and then has the option of giving that second document with the time and place information. But that caused a lot of problems. And with Aira Aira in 1996, it's clear that Congress wanted to streamline the process. And they wanted to prevent immigrants in proceedings from stalling, from playing out the clock. And so they created a stop time rule. And to make it as simple and efficient as possible, they wanted all of that information in a single document. And that's going to stop time the quickest. I mean, look at Mr. Pereira's case. We're talking a lot about Mr. Pereira. He wouldn't be here today. And I would point out that he's a green card holder. And on his way to citizenship, he'd be gone if the government had simply complied with the statute. The statute says all of that information, including time and place, is on the initial document. And had they done that, Mr. Pereira wouldn't have qualified for cancellation of removal. There'd be no discussion. Mr. Bart, would you agree, though, that in Pereira, the Supreme Court did not address the two-step process used in this case? So this is an open question, isn't it, whether the notice of hearing could cure any problems with the notice to appear? Yes. It did not completely answer that question. I do believe that Pereira significantly narrowed the playing field for the government. There are certain arguments that they simply cannot make anymore. They cannot make the argument anymore, for example, that a deficient NTA on its own stops time. That was what Pereira was about. I think it will be difficult for them to make an argument without addressing Pereira's use of a definitional model, to say that when Congress was talking about the NTA, they weren't just talking about a collection of information. They were defining a document. But yes, I agree that there's a narrow window through which the government is attempting to crawl, saying that technically it didn't exclude the use of two documents that together would constitute an NTA. Well, then coming back to the statute and your step one, if you will, analysis, how does the statute clearly tell you that an incomplete NTA can't be cured with a notice of hearing, as was used in this case? It tells me in several ways. First, its use of the singular. It's talking about a single document. Second, if we look at the broader statutory and regulatory context, we know that it's a prosecutor. It's the trial attorney that serves these case-initiating documents. The statute is referring to a document, but also a process, service. Who serves a case-initiating document? The Department of Homeland Security. But in this two-step process, the department has to co-opt immigration courts and basically deputize them and make them part of the prosecutorial team. It's an interesting and creative argument, and I don't have the materials in front of me, but my recollection is that you're referring to page, I think it's 1214 of Pereira, where it said that the government must provide this. Well, your argument about the immigration court not being part of, is part of the government. So I mean, literally, whether it's DHS or the immigration court that's serving the notice of hearing, it is still the government, at least under the holding of Pereira. Correct. But elsewhere in the statute, we have a very clear delineation of the powers of an immigration judge. And nowhere in that section of the statute that talks about the judge's powers does it say they can serve these case-initiating documents. They can send subsequent hearing notices. Also, we look at the statutes that gave the attorney general the power to delegate certain powers to his employees, including agents of DHS, previously INS. That's always been in the statute and regs, that only that body has the authority to issue these documents. So the stop-time rule was not created in a vacuum. It was created with a decade-long understanding that it's the INS that starts the case by serving the charging documents, not the court. And that makes sense. Do you need this separation of powers argument to prevail in this appeal? I don't think so, because I've got many things in the toolbox. I believe we have plain language. I believe we have legislative history showing the transition from the order to show cause that could be supplemented. The immigration court isn't part of the judicial branch, is it? It's a separate body, yes, but it's not... It's an administrative agency court. But there are designated officials within the regulations that are allowed to serve an NTA, and that does not include immigration judges. This isn't necessarily a constitutional separation of powers argument. No. I'm sorry. All right. Let me ask you... The question I'm about to ask you, I have to preface by saying it stems from my reading at the Seventh Circuit decision in Ortiz-Santiago. Why wasn't your client's motion to remand untimely, in that he could have challenged the NTA back in 2010, and he appeared at the hearing and didn't raise any objection? Seems like he was, as far as notice is concerned, why was there any problem with that? He showed up, and if there was a problem with the NTA, he could have raised it then. I think there would be... That would be a larger concern if his cases had come to administrative finality. However, his case was on appeal. He did not have a final removal order. And as frequently happens, especially in our system where proceedings take so long, what will happen over the passage of time is that someone becomes eligible for new forms of relief. A great example is somebody who applies for asylum. Perhaps they lose their case. They go up on appeal. They get married to a U.S. citizen. Suddenly they have this other path. And so a motion to remand is filed before the case becomes filed and says, hey, there's this new path for me. And that's exactly what happened here. You're right. He didn't raise the objection. When he was in front of the judge, not until the very end, did he even have physically 10 years in the U.S. But as soon as Pereira came out and as soon as he crossed that 10-year mark, he waved to the board and said, there's something new. There's something new. I qualify for something new. So I don't think we have a timeliness issue in this particular case. One question that I would have is, as it relates to Pereira and how it defines a notice to appear, as I understand it, it says that absent at least these two main points, the time and date for the hearing, that it is not a notice to appear. In other words, it is a nullity. And how does that play into an argument relative to the two-step process that the government is alleging here? Right. Well, what's interesting in the government's position is that they have to take two documents that on their own don't make an NTA. Pereira says exactly what you're saying, that an NTA missing time and place information is simply not an NTA. It's a nullity. Well, a notice of hearing, although it might have time and place information, is missing a host of other information that is found on the NTA, such as the charges and the factual allegations. So this document is not an NTA, and this document is not an NTA, but suddenly we wave our hands and combine them, and there's an NTA. But I think that's especially problematic when we have two separate agencies with two Congress wanted there to be one to make things streamlined and efficient and to get away from the two-step process that has caused so many problems in the past. Going back to Judge Bacharach's point, and I know you want to save some time, but absent legislative history, you still think you win, right? I still think I have plain text. I think I have legislative history. I have legislative purpose behind both the stop-time rule and the greater changes that were made in IHRA with respect to streamlining those procedures. And again, I believe I have this separation of powers argument, not in a constitutional sense, but in a purely prosecutorial, adjudicatory roles within deportation proceedings. And I'll reserve the balance of my time. Thank you. Good morning. May it please the Court, William Minnick representing the Respondent. The best interpretation of written notice in Section 1229A is the interpretation of the Sixth Circuit in Garcia-Romo and the Board in Mendoza-Hernandez that notice may be given in a single document or multiple documents. The text of the statute does not preclude the use of multiple documents, and the two-step process of a notice to appear in combination with a notice of hearing is permissible. But the words notice of hearing don't appear anywhere in 1229A. That's correct, Your Honor. And multiple documents, that phrase doesn't appear anywhere in 1229A, but NTA does. And Pereira said that only a complete NTA triggers the stop-time rule. So why doesn't the statute plainly require a valid NTA to stop the clock? Well, first of all, Pereira just didn't address the issue of whether the notice would be given. It did address what an NTA has to be, and it said a complete NTA is necessary to stop the clock. You didn't have one here. Well, that's correct, Your Honor, but the statute, 1229A is a notice statute. It defines a notice to appear as written notice. Well, it's... Would you complete the parenthetical? And I didn't mean to talk over Judge Matheson, but just to follow up on Judge Matheson's question, as Mr. Barr noted, Pereira specifically talks about what the definition of written herein as a notice to appear, what that means, and that is that it's something more than what Mendoza-Hernandez said, and that is it's more than a due process notion. It is, to go back to the colloquy that the presiding judge had, it is specifically what 1229 defines as a notice to appear. I mean, the Fifth Circuit and the Sixth Circuit and the dissent in Lopez all determined that Pereira did not address the issue of whether the notice may be given through multiple documents. Well, but we've read the cases. I understand that the Ninth Circuit and the Fifth Circuit, the dissent, but we need to hear the argument. You need to answer the question, not just say, well, this dissent says this or this  You've been asked a question about the statute. What's your answer on the statute? 1229A is a notice statute. It says written notice, parentheses, referred to as a notice to appear, shall be given specifying the following. The written notice part is not preceded by an article. It just says written notice. That could be read in the singular or multiple documents. That's the operative language of this notice statute. The parenthetical referring to a notice to appear, I mean, that's a naming parenthetical. It says what we're going to call it. It's the written notice portion of the statute. That's the operative language. But the referring to a notice to appear, even though a notice to appear may appear to be able to be read in the singular, the Dictionary Act says that singular references include the plural. Unless the context indicates otherwise. And here the context would be written notice, which can be read to mean a single document or multiple documents. At best, written notice, which doesn't preclude multiple documents on its face. And then a notice to appear, which may appear to be referring to a singular document. Make the statute ambiguous. Maybe. And let's, you know, to take some of the examples that the Sixth Circuit gave, but let me ask you a question about context. What about Rule 3 of the Federalism of Civil Procedure that says a civil action is commenced by the filing of a complaint? And so, let's say you or Mr. Barr files a lawsuit here in the District of Colorado. And it says, Mr. Wolpert, okay, I'm going to send you my prayer, my count one right now. In a month, I'm going to send you the prayer. And then I want you to, and then in a month from then, I'm going to send you the body of the complaint. And once I get all those together, put all those together, and that will be a complaint. Can you do that? Didn't the context of Rule 3, a civil action is commenced with the filing of singular Article A complaint, means that you have to provide a comprehensive document that constitutes a complaint. I don't know, under the rules, if a complaint can be amended, but here for... You can amend it, but then you provide a self-sufficient amendment that has the prayer, the body of the allegations, and the lie. I mean, here, 1229A is about, it's not a deadline provision, it's a notice provision. It's when a person is notified of the specified information. So, that's completed as soon as the person gets the notification, and the Sixth Circuit talked about reading the language of the statute with an ordinary meaning. The examples that you referenced, the book that's delivered to the publisher with a chapter at a time or a term paper, missing a conclusion that's completed. The Sixth Circuit found that the ordinary meaning of the statute doesn't preclude notifying an individual with two documents. Right. So, the Sixth Circuit said that you can submit Chapter 1 and Chapter 2, et cetera. Let's say you order a book of War and Peace from Amazon, and they send you Chapter 1. They say, well, a month later, we're going to send you Chapter 2, or the rest of War and Peace. Do you think that that would be a reasonable expectation by anybody, that you order a... Because I'm using the example from the Sixth Circuit, the singular Article A, book. So, if you order a book from Amazon, would anybody expect to get it seriatim? I don't know if the issue is expectation or whether it's permissible. Here we're saying it's permissible for the government to provide notice through two documents. And so, what in effect the government is doing is curing what would be perceived to be a deficiency in the initial NTA, right? Correct, Your Honor. Well, what continues to trouble me is looking at Pereira, and I understand Pereira didn't deal with this particular incident, but it dealt with the meaning, what meaning we should attribute to an NTA. And in that context, what I keep going back to is Pereira's discussion of the dissents used of the three-wheeled Chevy. And the whole point in rejecting that reference, the majority in Pereira said, this thing that you send that doesn't include this time and place, it doesn't exist. It's a nullity. It can't be cured. And that's what I keep going back to, and so help me with that, because it seems to me that if you follow the logic of that, when you send this notice of hearing, there is nothing to cure because it doesn't, it was a nullity. It didn't exist. Help me. The Supreme Court talked about the essential function of a notice to appear to be giving notice. It said, if the words notice to appear mean anything, it means at a minimum, the government has to provide notice of the information. But it was telling you what it is, right? What it was, you know, it talked about in that particular section of Pereira, it's saying you have to look at what definitionally is being done here, and definitionally, if it doesn't include these two things, it isn't a notice to appear, and if it isn't a notice to appear, there is nothing to cure. Well, it's not, notice to appear, as we argued in the brief, refers to the constellation of information that the person must be given notice of. So when the deficient notice to appear is served, it's not a notice to appear. But once the person gets all the notice that they're required to receive in the statute, then they have received the notice to appear. I'd like to bring the other part of the relevant statutory material into the picture, which is 1229B. It may be that the notice of hearing ended up giving Mr. Benuelos Galvez the information on what he was charged with, and where he has to show up, right? I guess the NTA actually had the location, it just didn't have the time and place. So he gets the time and place, and that enables him to show up, but Pereira, in this case, don't really have to do with when he has to show up for the hearing, but whether his time is stopped, right, his continuous presence time is stopped. And so you move over to 1229B, and it says notice to appear in 1229B. So maybe the notice of hearing cured the lack of information on when he's supposed to show up, but when you bring 1229B into the picture, it still requires a valid notice to appear. And the government didn't amend the NTA. Maybe it could have amended the NTA, but it didn't. So why does the clock stop with the notice of hearing? Notice of hearing doesn't appear anywhere in 1229B. 1229B, you're referring to the stop time rule? Stop time statute. Oh, D. Oh, I'm sorry. D1. D1, I'm sorry. I misspoke. D1. D1. That would have made it a harder question. The stop time rule refers back to the definition of notice to appear, when the person is served with a notice to appear under 1229A. So for what stops time, you just look back to 1229A, and there you're left with written notice, referred to as a notice to appear, which we say is ambiguous, because written notice could refer to a single or multiple documents, and a notice to appear on its face could refer to a single document, although the dictionary acts as it imports the plural. So for the stop time rule, it refers back to 1229A, when a notice to appear is served under 1229A. But would you agree that we're talking about both 1229 and 1229B both refer to the singular article A? They both say, they both, the phrase A notice to appear occurs in both of those statutes. And help me to understand, why is it a natural reading to assume that one can say that a constellation of information, I like that phrase, but it just doesn't strike me as being how one would ordinarily interpret language like this. A notice to appear means, well, once I get all these little pieces together, I have this thing that's called a notice to appear. When the Supreme Court has already told us, when you got this initial stop, it just didn't exist. I mean, so what, am I just supposed to put it in my pocket and wait until I get all these other things, and then I have a notice to appear? I mean, that's just not, help me. That's not how I ordinarily read language. We're relying on the phrase written notice. Which includes a parenthetical, which takes you to D1. You can use written notice, but Congress could have just said written notice, but it didn't just say written notice, did it? They took the time to name it, because under the prior regime, there were different documents. Yes, to name it. And they did name it. And so they named a notice to appear, which leads us to where we are now. It seems to me that I understood your argument as saying, well, the agency has come up with a pragmatic approach to the fact that maybe when the person is initially served, you just don't know exactly when the hearing's going to happen. Maybe even you don't exactly know where it's going to happen. But they've come up with a sort of practical, common sense solution that will follow that up with that information in the notice of hearing. In other words, the two-step process. This is sort of just common sense solution to a real world problem with having the information right at the time that the initial service is made. Is that a fair description of what's happened? I think it is, and I think it's not precluded by the text of the statute. Well, that's the question, isn't it? I mean, it may be a practical solution, but can the statute support it? Isn't that the question we have to address? Yes, Your Honor, and you should defer under Chevron, because the statute is ambiguous and the board's interpretation is reasonable. If I could just respond to one point that Petitioner made during his argument about the immigration judge not having the authority to issue a notice to appear, that has no bearing on this case here. The statute is concerned with notice, not who issues it. And we're not saying that the piece of paper issued by the IJ is a notice to appear. We're saying that it completes the notice required under the statute. Unless the court has additional questions, we ask the court to deny the petition. Thank you, counsel. Thank you. With my remaining minute, I would like to point out that the government, the Board of the Court of Appeals, it was close enough to constitute a notice of appear, even if it didn't have all of the required information. That was a matter of Camarillo, and that was the case that was overturned by Pereira. Now in reaching that determination, the Board at the time rejected the notion that a hearing notice could ever fix that three-wheeled Chevy. It said, no authority supports the contention that a notice of hearing issued by the immigration court is a constituent part of a notice to appear, the charging document issued only by the DHS. I agree with that. You're reading from what case, I'm sorry? Matter of Camarillo, the case, the Board case that was specifically overturned by Pereira. And now, of course, they have to reverse their position on that, and they are saying exactly the opposite. That a notice of hearing, they are now saying, basically is a constituent part of a notice to appear. I think their initial contention was correct. Thank you, counsel. Thank you, both. I appreciate the good argument.